B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br><br>Bora Bora Inc. | DEFENDANTS<br><br>Quiksilver Inc.; John Doe 1-10 |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Rivera & Fernández Reboredo, PSC<br>PO Box 360764, San Juan, PR<br>00936-0764; Tel. 787-281-0707 | ATTORNEYS (If Known) |
| **PARTY** (Check One Box Only)<br>☒ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Adversary proceeding concerning, Request for Peliminary and Permant Injuction; Violation of Puerto Rico Dealers Act; Breach of Contract; Collusion to Inflict Damages; Equitable Subordination under 11 USC § 510(c); Violation of Automatic Stay under 11 USC 362; and Avoidance under 11 USC§ 547.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☒ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☒ Check if a jury trial is demanded in complaint | Demand $ 46,690,135 |
| Other Relief Sought | |

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR | BANKRUPTCY CASE NO. | |
| DISTRICT IN WHICH CASE IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br><br>September 24, 2009 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Jorge A. Fernández Reboredo | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

| | |
|---|---|
| IN THE MATTER OF: | |
| BORA BORA, INC.; a/k/a PUERTO ESCONDIDO; a/k/a DROP OUT; a/k/a THE METHOD; a/k/a BORA BORA <br><br> Bora Bora | CASE NO. 09-03693 (ESL) <br><br> CHAPTER 11 |
| BORA BORA, INC. <br><br> **Plaintiff** <br><br> v. <br><br> QUIKSILVER, INC.; AND JOHN DOE, 1 - 10 <br><br> **Defendants** | ADV. PROC. NO.: <br><br> (PRELIMINARY AND PERMANENT INJUNCTION; VIOLATION OF P.R. LAW 75; DAMAGES FOR BREACH OF CONTRACT; DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY; AVOIDANCE UNDER 11 ACTION UNDER 11 USC §547; DAMAGES PURSUANT TO ARTICLE 1802 OF THE PR CIVIL CODE; EQUITABLE SUBORDINATION) |

# COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW**, Bora Bora Inc. as Debtor, and Plaintiff in the above-captioned adversary proceeding (hereinafter referred to as Debtor or "Bora Bora") through the undersigned counsel and very respectfully **STATES, ALLEGES AND PRAYS**:

## PRELIMINARY STATEMENT

For over twenty years, Bora Bora (Debtor) has undertaken efforts to sell, promote and distribute Quiksilver merchandise as well as develop product specific for Puerto Rico. These efforts include selling backpacks, T-shirts, swim wear, accessories and

1

other apparel. In some instances these goods were sold with the logo of *both* Bora Bora and Quiksilver. Debtor, at considerable expense, has launched numerous advertising campaigns promoting Quiksilver products throughout Puerto Rico. Many of these advertising campaigns launched and introduced new product lines into Puerto Rico with highly successful results. Due significantly to Debtor's efforts over the past twenty years, Quiksilver's market in Puerto Rico has grown substantially.

Debtor submitted its petition for Bankruptcy under Chapter 11 of the Bankruptcy Code on May 6, 2009. Some time between May 6, 2009 and May 28, 2009, Quiksilver decided to unilaterally terminate its relationship with Debtor. In its response to this Court, Quiksilver provided just two reasons for the termination of the relationship—the first is that unnamed third parties, who apparently are also competitors of Debtor, told Quiksilver that Debtor has a "poor reputation in the community" and the second is that Debtor sold Quiksilver goods at discount prices.

Debtor's efforts promoting and distributing Quiksilver products has aided in the creation of a market for Quiksilver goods in Puerto Rico and has attracted new clientele for Quiksilver's products. According to Puerto Rico law, 10 L.P.R.A. § 278 *et seq.*, Quiksilver cannot terminate this relationship without cause. Quiksilver's "cause" of relying on the criticisms of unnamed parties who have an interest in seeing Debtor cease operations is not "just cause" under Puerto Rico law.

Moreover, in pursuing its action to terminate its relationship, Quiksilver colluded with Debtor's competitors to eliminate Debtor's business. Such action violates 31 L.P.R.A. § 5141. Further, this attempt to injure and terminate Debtor's

2

business operations was done with the knowledge that precipitating Debtor's liquidation would bring advantage to Quiksilver but harm the other creditors of the estate in violation of 11 USC § 510(c).

Accordingly, Debtor now brings this Adversary Proceeding against Quiksilver to vindicate its rights under Puerto Rico and U.S. Bankruptcy law as follows.

## I. JURISDICTION

1.  Debtor is in possession of the estate and, as such, is currently in proceedings before this Court. (Bankr. Case No. 09-3693 (ESL)).

2.  The events that give rise to this suit occurred after the Debtor submitted it's Petition for Bankruptcy and fundamentally affects the Debtor's relationship with Quiksilver, a creditor and one of Bora Bora's key suppliers, and its capability to continue the restructuring process under Chapter 11 of the Bankruptcy Code.

3.  Therefore, this Court has jurisdiction because this matter this is a core matter pursuant to 28 USC § 157(b)(2).

4.  Debtor is entitled to pursue this Complaint with all its claims pursuant to 11 USC § 1107 *et seq.*

## II.    THE PARTIES

5.  Bora Bora, Inc. is a corporation dedicated to the sale and distribution of surfing equipment, casual apparel, footwear and accessories duly organized,

existing, and doing business under the laws of Puerto Rico with its primary place of business and principal office in Puerto Rico[1].

6. Quiksilver, Inc. (hereinafter referred to as "Quiksilver") is a Delaware Corporation that designs, manufactures and distributes branded apparel, footwear, accessories and related products with its principal place of business, located in Huntington Beach, California.

7. Defendants John Doe 1 through 10 are yet unknown entities or individuals with which Quiksilver have colluded to exclude Debtor from the market it developed during the past twenty years in the jurisdiction of Puerto Rico.

## III. FACTS

8. Prior to opening its first retail outlet in 1992, Debtor (then operating under the name "The Method" and "Dropout") begun to purchase to resell, promote, and distribute Quiksilver branded goods in the market of Puerto Rico.

9. Prior to 1992, Quiksilver products and brand had a very limited presence in the market of Puerto Rico.

10. When opened its first Bora Bora store in 1992, Debtor not only continued its purchases, marketing, advertising and distribution of Quiksilver products in Puerto Rico but also promoted additional sales through direct retail presence in the market.

---

[1] Since its creation Bora Bora, Inc. has also operated under the commercial names of "Puerto Escondido", "Dropout" and "The Method".

4

11. At the present time, Bora Bora owns and operates three (3) retail stores throughout Puerto Rico through which it continues, to promote, and distribute Quiksilver branded goods.

12. Since the beginning of this relationship, Debtor has undertaken extensive efforts to market and promote the Quiksilver brand and its products in Puerto Rico, establishing a market for the Quiksilver products in Puerto Rico.

13. In 2001, Quiksilver even categorized Debtor as the **"premier retailer"** of Quiksilver products in Puerto Rico and underwent efforts to endow Bora Bora with its own exclusive Quiksilver license.

14. Until May 2009, Debtor was still the premier retailer of Quiksilver products in Puerto Rico.

15. In order to establish the Quiksilver brand in Puerto Rico, Debtor invested in extensive advertising campaigns at its own expense to promote Quiksilver goods, cross-branded goods, and developed and launched an exclusive line of specific goods for Debtor's stores in Puerto Rico (the "Puerto Rico Line")[2]. The Puerto Rico Line comprised of two different elements exclusively designed for Debtor's stores. One of these elements was referred as the "Puerto Rico Series" which for over three years comprised apparel (t-shirts, lids, board shorts, etc.) with Puerto Rico themed graphics and details. Debtor exclusively sold the "Puerto Rico Series" for over three years in the market.

16. Based on its familiarity and direct contact with the Puerto Rico, Debtor created a new line of business that redefined Quiksilver's presence and sales

---

[2] The Puerto Rico Line comprises Quiksilver and Roxy brand goods which include t-shirts, apparel, fanny packs, backpacks and accessories.

in Puerto Rico. Upon marketing efforts and strong distribution structure, Debtor moved Quiksilver to redesign its backpacks line according to the needs of the market. Debtor's sales efforts resulted with the introduction of a new generation of backpacks targeted for the Puerto Rican students. Such line became part of the Puerto Rico Line and was referred to as the "Back to School Program"[3] exclusively sold at Debtor's stores.

17. For over four years, Quiksilver treated Debtor as the exclusive dealer of the Puerto Rico Line with its Puerto Rico Series and Back to School Program. Reciprocally and during that period, Debtor made a considerable investment of time and economic resources to introduce, market, promote, distribute, sell and establish Quiksilver goods, and cross-branded goods in the Puerto Rico market.

18. Debtor's advertising campaigns, distribution and sale efforts of Quiksilver products have resulted in developing, building and consolidating a market for the Quiksilver brand and product lines, increasing Quiksilver's customer base in Puerto Rico.

19. As result of this long-standing commercial relationship, Quiksilver sales and revenues from and presence in the Puerto Rico market have risen substantially.

---

[3] Upon Debtor's request, Quiksilver redesigned and modified its backpack lines according to Puerto Rico market trends and consumers' preferences in sizes, prints and colors.

20.     Up to 2008[4] the sales of Quiksilver branded products represented approximately fifty percent (50%) of Debtor's total sales.

21.     On May 6, 2009, for reasons unrelated to the sale of Quiksilver goods, Debtor submitted a Bankruptcy petition under Chapter 11 of the Bankruptcy Code. (Case No. 09-3693).

22.     Between May 6, 2009 and May 28, 2009, Debtor attempted to purchase goods from Quiksilver on a cash basis in order to continue the distribution and sale of Quiksilver products throughout its stores.

23.     Since that time until this date, Quiksilver has refused to process any orders on a cash basis undermining the long-standing distribution and dealership relation with Debtor.

24.     Since Debtor's filing of the Petition, Quiksilver's refusal to process any orders (even on a cash basis) has been conditioned upon Debtor's payment of its pre-petition debt. (See Debtor's *Motion for* Quiksilver *to Show Cause Why its Actions did not Violate the Automatic Stay.* (Case No. 09-3693; Dkt. No. 19).[5]

25.     On May 28, 2009, Quiksilver gave notice to Debtor that it would not process any orders placed, even on a cash on delivery ("COD") basis, and that it wished to terminate the relationship it had with Debtor – terminating without just cause a relationship of more than 20 years.

---

[4] It must be noted that in the six month period prior to its Petition, Debtor's sales of Quiksilver goods declined as a total percentage of Bora Bora's sales from 50% to approximately 25% - 30%.

[5] For reasons of judicial economy, the dispute regarding Quiksilver's violation of the automatic stay has been included into the instant Complaint.

26. In an affidavit submitted to this Court attesting that Quiksilver did not terminate its relationship with Debtor because of pre-petition debt, Quiksilver's Director of Accounts Receivable, John Ewing, testified that Quiksilver terminated its relationship with Debtor because Quiksilver's customers told Ewing that Debtor "was not well-regarded in the community" and because Debtor was selling Quiksilver goods at a discount. (*See* Affidavit of John Ewing, para. 5, Case No. 09-3693; Dkt. No. 37).

27. In responses to discovery requests regarding the violation of the automatic stay, Quiksilver further attempted to justify its unlawful termination of the distribution relation because of their alleged poor opinion as to the character of Debtor's president.

28. Up to this date, Quiksilver has offered no other legal reason to terminate the long-standing relationship with Debtor in a patent violation of the law.

29. Quiksilver has not even been able to properly identify those individuals who allegedly told it that Debtor was "not well regarded" in the community.[6]

30. Although Quiksilver's second justification for terminating the relationship with Debtor was supposedly because of Debtor selling Quiksilver product at discount prices, Quiksilver currently sells its product to the biggest discount retailers in Puerto Rico – Marshall's and Costco. Debtor also notes that Quiksilver allows its product to be sold by other retailers, Kokomo, La Gran Vía, Khamea Meha and others, at discount prices.

---

[6] Even after discovery regarding the issue of the automatic stay, Quiksilver has still failed to provide the names of the individuals who allegedly told it that Bora Bora has "a poor reputation".

## IV. FIRST CAUSE OF ACTION - PRELIMINARY AND PERMANENT INJUNCTION UNDER PUERTO RICO LAW 75

31. Debtor hereby incorporates by reference all of the allegations, contained in the preceding paragraphs.

32. Debtor's relationship with Quiksilver is protected under the "Puerto Rico Dealer's Act". 10 L.P.R.A. § 278 *et seq.* (also referred to as "Law 75").

33. According to Puerto Rico Dealers' Act, whenever a "dealer" and a "principal" establish a relationship, the principal may not terminate that relationship without showing just cause.

34. Quiksilver reasons for terminating its agreement and long standing relationship with Debtor do not constitute just cause under the Puerto Rico Dealers Act.

35. In any litigation in which there is directly or indirectly involved the termination of a dealer's contract or any acts in prejudice of the relationship between the principal or grantor and the dealer, the court may grant, during the time the litigation is pending solution, any provisional remedy or measure of an interdictory nature to do or to desist from doing, ordering any of the parties, or both, to continue, in all its terms, the relation established by the dealer's contract, and or to abstains from performing any act or any omissions in prejudice thereof.

36. Debtor is entitled to injunctive relief in light of Quiksilver's unjustified termination of the dealer's contract and in light of the fact that such termination will impede Debtor from reorganizing its business under Chapter 11 of the Bankruptcy Code.

## V. SECOND CAUSE OF ACTION - VIOLATION OF PUERTO RICO LAW 75

37.    Plaintiff incorporates by reference all of the allegations, contained in the preceding paragraphs.

38.    As a dealer and distributor for over twenty years, Debtor's relationship with Quiksilver is protected under Law 75.

39.    Under the Puerto Rico Dealer's Act, whenever a "dealer" and a "principal" establish a relationship, the principal may not terminate that relationship without showing just cause.

40.    If the principal or supplier terminates the relationship without just cause, the dealer may claim damages in the amount of actual damages, loss of goodwill, the loss of profit obtained over the past five years, promotional costs, and other equitable considerations.  10 L.P.R.A. § 278b.

41.    A "dealer" for the purposes of Law 75 is an entity that has "aided in the creation of a market or [has] attracted new clientele for a product or service through promotion and sales." *See Homemedical v. Sarns/3M Healthcare*, 875 F.Supp. 947, 950 (D.P.R. 1995)(*quoting San Juan Merc. v. Canadian Transport Co.,* 108 D.P.R. 211, 217 (P.R. 1978).

42.    Once a "dealer" has entered into a relationship with a principal to promote and sell product that results in the creation of a market or has resulted in attracting new clientele, regardless of whether there is a written contract governing the relationship, the relationship cannot be terminated by the principal unless the principal demonstrates just cause.  *See R.W. International Corp. v. Welch Food, Inc.*, 13 F.3d 478, 483 (1st Cir., 1994).

43. Puerto Rico law mandates that the provisions of Law 75 be "liberally interpreted" and prevents "dealers" covered by the law from waiving any of their rights protected by the law. 10 L.P.R.A. § 278c.

44. Accordingly, Law 75 "clearly incorporates within its reach *any* arrangement between a supplier and dealer in which the dealer is actually in the process of distributing the supplier's merchandise in Puerto Rico." *R.W. International Corp. v. Welch Food, Inc.*, 13 F.3d 478, 482-83 (1st Cir., 1994)(emphasis in original). *See also Medina & Medina v. Country Pride Foods, Ltd.*, 858 F.2d 817, 821 (1st Cir., 1988) (*incorporating* an advisory opinion from the Supreme Court of Puerto Rico *emphasizing* the broad scope of Law 75 and *holding* that dealers are protected by Law 75 regardless of whether there is a written contract and regardless of whether there is a lack of exclusivity).

45. Debtor's efforts to market, promote, distribute and sell Quiksilver branded goods not only has substantially increased the sale of Quiksilver goods in Puerto Rico but also has developed a market where Quiksilver's brand recognition and customer base has been established, particularly in the Back to School Program with its school backpacks line.

46. Quiksilver itself termed Debtor as its "premier retailer" in Puerto Rico and noted Debtor's efforts in building a significant market share for Quiksilver goods in Puerto Rico.

47. The evident success in promoting and selling Quiksilver goods in Puerto Rico results in Debtor becoming a "dealer" for the purposes of Law 75.

48. Quiksilver's actions over the course of twenty years of selling product to Debtor, knowing full well that Debtor was exerting considerable effort to promote and sell Quiksilver product, results in Debtor and Quiksilver having a "dealer contract" or principal-dealer relationship for the purposes of Law 75.

49. By suddenly, without warning and unilaterally deciding not to sell goods to Debtor even on a cash basis, under any circumstance, Quiksilver terminated its principal-dealer relationship with Debtor in violation of Law 75. 10 L.P.R.A. § 278a1(b).

50. Quiksilver's alleged "cause" for terminating this relationship that unnamed parties communicated to Quiksilver that Debtor was held in "poor regard" and that Debtor sold goods at discount prices, does not constitute "just cause" under Law 75. 10 L.P.R.A. §278a.

51. Quiksilver's abrupt and unilateral decision to terminate its relationship with Debtor resulted in Debtor suffering loss of good will and substantial loss of sales.

52. Pursuant to Law 75, Debtor is entitled to seek and claim of damages against Quiksilver by examining the profits that Debtor achieved over the past five years in selling Quiksilver goods, in the loss of goodwill, in the amount of expenses it has incurred promoting Quiksilver product, and other factors including the duration of the relationship. Accordingly, Debtor estimates its damages to be in the amount of not less than $15,000,000.

53. Pursuant to 10 L.P.R.A. § 278e, Debtor also claims reasonable attorney's fees accrued to collect on this Law 75 action.

## VI. THIRD CAUSE OF ACTION - BREACH OF CONTRACT AND REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTION

54. Debtor incorporates by reference all of the allegations, and other information referenced in all of the preceding paragraphs.

55. Debtor and Quiksilver have enjoyed a mutually beneficial relationship through which Quiksilver supplied to Bora Bora its products and Debtor introduced, promoted, marketed, distributed and sold the Quiksilver branded products in the Puerto Rico market.

56. Quiksilver's unilateral, abrupt and unjustified modification of the sale and shipping terms of its goods without reasonable notice have undermined Debtor's sales and profits.

57. Quiksilver's unjustified decision to terminate its relationship with Debtor constitutes a direct breach of the parties' mutual agreements and is in violation of   Articles 1054 and 1059 of the Puerto Rico Civil Code.      P.R. Laws Ann., *Title 31, §§ 3018* and *3023.*

58. Bora Bora is currently bankrupt and is in the process of reorganizing itself under Chapter 11 of the Bankruptcy Code.

59. Given that the sale of Quiksilver products represent a substantial amount Bora  Bora's total sales, Quiksilver's breach seriously impairs Bora Bora's capacity    to re-organize its business and has caused Bora Bora irreparable harm.

60. In a balance of equities Quiksilver would not be affected if ordered to continue supplying merchandise on a cash basis. In fact Quiksilver would

13

continue to benefit from the long standing relationship it has had with Debtor for the last twenty years.

61. Accordingly and due to Quiksilver's breach of contract, Debtor estimates its damages to be in the amount of not less than $15,000,000.

## VII. FOURTH CAUSE OF ACTION - COLLUSION WITH UNNAMED PARTIES TO INFLICT DAMAGE AGAINST DEBTOR IN VIOLATION OF 31 L.P.R.A. § 5141

62. All of the facts, allegations, and other information referenced in all of the preceding paragraphs are incorporated herein by reference.

63. Quiksilver testified under oath to this Court that one of the reasons why it terminated its relationship with Debtor was because several unnamed customers of Quiksilver have manifested that Debtor had a "poor reputation".

64. By information and belief, these unnamed entities are direct competitors of Debtor.

65. According to Quiksilver's statement to this Court made under oath, Quiksilver met with Debtor's competitors and collectively, Quiksilver and the competitors, determined to take action against Debtor to eliminate Bora Bora stores and Debtor's operations from the market.

66. Accordingly, Quiksilver and Debtor's competitors colluded with one another to take action to eliminate a common competitor in order to benefit themselves.

67. This action was taken without Debtor ever participating in these conversations.

14

68. This action whereby Quiksilver and Bora Bora's competitors colluded with one another to injure Debtor and, presumably, put Bora Bora stores out of business, was intentionally designed to injure Debtor.

69. Pursuant to 31 L.P.R.A. § 5141, Debtor has a cause of action against Quiksilver for its intentional acts to injure Debtor's business by colluding with Bora Bora's competitors in order to force Debtor to leave the market or go out of business.

70. Accordingly and due to Quiksilver's breach of contract, Debtor estimates its damages to be in the amount of not less than $15,000,000.

## VIII. FIFTH CAUSE OF ACTION - EQUITABLE SUBORDINATION

71. All of the facts, allegations, and other information referenced in all of the preceding paragraphs are incorporated herein by reference.

72. By abruptly and unilaterally terminating its relationship with Bora Bora, Quiksilver knew that it seriously imperiled Debtor's business operations.

73. By knowingly imperiling Debtor's business operations, Quiksilver sought to harm not only the Debtor, but the Bankruptcy estate as well.

74. Quiksilver's efforts were designed to plunge Debtor into liquidation.

75. Quiksilver had, during the course of its relationship with Debtor, pressured its president, Oscar Juelle, to sign a personal guaranty in favor of Quiksilver allowing it, should the agreement be put in force in the manner Quiksilver alleges, (*See* Complaint of Quiksilver, U.S. District Court for the Central

District of California, Case No. 09-3535), to claim any shortfall in liquidation proceedings against the Debtor.

76. Accordingly, Quiksilver sought to benefit from forcing Debtor into liquidation even though such action would harm other creditors. Due to the alleged personal guaranty from Debtor's president, Quiksilver would not be harmed as the other creditors in this case would be.

77. The Bankruptcy Code under 11 USC § 510(c) allows this Court to subordinate a creditor's claim when that creditor has engaged in "misconduct that injures other creditors or confers an unfair advantage on the claimant." *In re Kresiler*, 546 F.3d 863, 865 (7th Cir., 2008).

78. Generally, the claim of equitable subordination is available when a creditor has engaged in inequitable conduct, that results in injuring the other creditors, and that the subordination is not inconsistent with the other terms of the Bankruptcy Code. *See e.g. U.S. v. Noland,* 517 U.S. 535, 538-39 (1996).

79. Courts have, for the purposes of 11 USC § 510(c), defined "inequitable conduct" as "fraud, illegality, or breach of fiduciary duty." *See e.g. In re Kresiler*, 546 F.3d 863, 865 (7th Cir. 2008).

80. Here, Quiksilver by conspiring with Debtor's competitors to terminate Debtor's business while knowing that the rapid collapse of Debtor's business would ripen a claim against Debtor's President in his personal capacity, no matter of the harm suffered by other creditors going through the Chapter 11

process along with Debtor, is the type of inequitable conduct that wrongly advantages Quiksilver to the detriment of other creditors.

81. Accordingly, the Debtor requests that all of Quiksilver's claim be subordinated to the other unsecured creditors in this case.

82. Bora Bora reserves the right to amend the instant Complaint after Discovery.

## IX. SIXTH CAUSE OF ACTION - VIOLATION OF THE AUTOMATIC STAY

83. Plaintiff incorporates by reference all of the allegations, contained in the preceding paragraphs.

84. The provisions of the Bankruptcy Code governing the automatic stay prevent "any act to collect, assess, or recover a claim against the Debtor that arose before the commencement of the case." 11 USC § 362(a) (6).

85. Once Debtor filed its petition under Chapter 11 of the Bankruptcy Code, the automatic stay provision of 11 USC § 362(a) came into force. Indeed, "the stay springs into being immediately upon the filing of a bankruptcy petition: because the automatic stay is exactly what the name implies–automatic–it operates without the necessity for judicial intervention." *Sunshine Dev. Inc., v. FDIC*, 33 F.3d 106, 113 (1st Cir. 1994).

86. On May 7, 2009, after Debtor notified Quiksilver about its Bankruptcy petition, Debtor entered into discussions with Quiksilver to purchase goods from them on a COD or advance cash payment method.

87. In response, Quiksilver demanded to be denominated as a critical vendor.

88.  On May 11 and 12, 2009 Quiksilver sent Debtor summaries of the product it had available for sale and sent Debtor its banking information so that it could receive wire transfers in advance of shipping orders.

89.  Debtor, following Quiksilver's instructions, placed an order with Quiksilver and purchased a cashier's check for the order.

90.  On May 13, 2009 Debtor delivered a cashier's check to Quiksilver.

91.  Quiksilver deposited the check.

92.  On May 19 and May 20, 2009 Quiksilver representative John Ewing met with Debtor to discuss terms of continuing the business relationship.

93.  Quiksilver's Accounts Receivable Manager, John Ewing, began the meeting between Quiksilver's representatives and Debtor's representatives by demanding "how are you going to pay us?"

94.  During the same meeting, shortly after demanding full payment of pre-petition debt, John Ewing informed Debtor's president that Quiksilver was pursuing a suit against him in his personal capacity in order to get payment of Debtor's pre-petition debt.

95.  Debtor offered to pay Quiksilver 40% of pre-petition debt during the course of the bankruptcy proceedings, denominate Quiksilver as a critical vendor, and pay in advance to receive all orders.

96.  In response to Debtor's offer, Quiksilver refused and terminated the relationship.

97.  In response to Debtor's motion for Quiksilver to show cause why its actions did not violate the Automatic Stay, Quiksilver responded that it terminated the

relationship because Debtor did not "have a good reputation in the community," Debtor "poorly merchandised" Quiksilver product, and Debtor sold Quiksilver product at "discount prices." (*See* Declaration of John Ewing, Case No. 09-3693, Dkt. No. 37.)[7]

98.  Quiksilver knew that it was an irreplaceable vendor of Debtor's.

99.  Quiksilver used its position to extort payment of pre-petition debt from Debtor.

100.  Quiksilver knew about the Bankruptcy proceedings yet still demanded payment of pre-petition debt.

101.  Quiksilver's actions to condition the continuance of its relationship with Debtor on payment of pre-petition debt violated the automatic stay and Debtor is entitles to damages in a sum of not less than $1,500,000.00.

## X. SEVENTH CAUSE OF ACTION - AVOIDANCE ACTION UNDER 11 USC § 547

102.  All of the facts, allegations, and other information referenced in all of the preceding paragraphs are incorporated herein by reference.

103.  In the 90 days prior to submitting its petition under Chapter 11 of the Bankruptcy Code, Debtor transferred $190,135.00 to Quiksilver.

104.  This amount represents a transfer to Quiksilver that redounds to the benefit of Quiksilver that was made while Debtor was insolvent.

---

[7] Despite the testimony of John Ewing already submitted to this Court, Quiksilver in responses to Discovery denies ever having criticized Debtor for poorly merchandising product and denies ever having terminated the relationship because Debtor sold goods at discount prices. Accordingly, the only remaining basis for Quiksilver's decision to terminate the relationship is Debtor's "reputation in the community."

105. This transfer enabled Quiksilver to receive more than it would have received if Bora Bora's case proceeded under Chapter 7 of the Bankruptcy Code.

106. Accordingly, Bora Bora, acting as Trustee and Debtor in Possession, hereby seeks the return of $190,135 as it was transferred in violation of 11 USC § 547.

## XI. RELIEF REQUESTED

**WHEREFORE**, Debtor respectfully requests this Court to enter judgment against Quiksilver as follows:

A.   Under the First Cause of Action:

1.   That this Court finds Debtor and Quiksilver to have a relationship that is governed by Law 75;

2.   That Debtor is entitled to a preliminary and permanent injunction enjoining Quiksilver from terminating its agreement with Debtor and to continue supplying Quiksilver branded products to Bora Bora, and reasonable attorneys' fees incurred in pursuing this claim;

B.   Under the Second Cause of Action:

1.   That this Court finds Debtor and Quiksilver to have a relationship that is governed by Law 75;

2.   That Quiksilver's unilateral action to terminate its relationship with Debtor was without just cause and violated Law 75;

3.   That this Court award Debtor damages equal to at least the harm caused, plus the profits obtained selling Quiksilver goods over the past five

years – an amount estimated at not less than $15,000,000.00, the costs of Bora Bora's promotional campaigns on behalf of Quiksilver products, and reasonable attorneys' fees incurred pursuing this action;

C. Under the Third Cause of Action:

1. That this Court find Quiksilver's has breached its contractual obligation to Debtor;

2. That said breach will cause irreparable harm to Bora Bora;

3. That in the balance of interest Quiksilver will not be affected is ordered to continue supply its products to Bora Bora on a cash basis;

4. That this Court award Bora Bora damages equal to at least the harm caused, plus the profits obtained selling Quiksilver goods over the past five years –an amount estimated at not less than $15,000,000.00, the costs of Debtor's promotional campaigns on behalf of Quiksilver products, and reasonable attorneys' fees incurred pursuing this action;

D. Under the Fourth Cause of Action:

1. That this Court find that Quiksilver's efforts to collude with Debtor's competitors in order to terminate Debtor's operations was an intentional violation of 31 L.P.R.A. § 5141.

2. That this Court award damages to Debtor representing the harm inflicted by Quiksilver against Debtor for its actions in violation of 31 L.P.R.A. § 5141 and punitive damages to Debtor for Quiksilver's intentional and

wrongful conduct. Such damages are estimated in a sum of not less than $15,000,000.00 and reasonable attorneys' fees incurred pursuing this action;

E. Under the Fifth Cause of Action:

1.     That this Court find that Quiksilver engaged in wrongful conduct that was detrimental to the other creditors of the instant bankruptcy estate in order to facilitate Quiksilver's own interests in violation of 11 USC § 510(c).

F. Under the Sixth Cause of Action:

1.     That this Court find Quiksilver's actions to have violated the Automatic Stay and that it hold Quiksilver in contempt and award damages and all other relief necessary to Debtor to compensate it for Quiksilver's contempt, in a sum of not less than $1,500,000.00;

G. Under the Seventh Cause of Action:

1.     That this Court avoid the transfer of at least $190,135.00 to Quiksilver made in the 90 days prior to the Bankruptcy Petition pursuant to 11 USC § 547.

That this Court award any and all other remedies it deems proper and equitable, including the award of attorney fees in pursuing this action, including but not limited to any award provided for under Puerto Rico Law 75.


**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 24th day of September 2009.

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such

filing to the parties appearing in said system, as listed below, including the U.S. Trustee, to counsel for Quiksilver, to the twenty (20) largest creditors.

**C. CONDE & ASSOC.**
Attorneys for Debtor

**Carmen Conde Torres, Esq.**
USDC 207312

254 San José Street, 5th Floor
Old San Juan, Puerto Rico 00901
Tel: (787) 729-2900
Facsimile: (787)729-2203
E-Mail: _condecarmen@microjuris.com_

**RIVERA & FERNÁNDEZ-REBOREDO PSC**
Special Counsel for Debtor Bora Bora Inc.
**Postal Address**: P.O. Box 360764
San Juan, PR 00936-0764
**Physical Address**: 62 José Martí Street
Urb. Floral Park, Hato Rey, P.R. 00919
Tel. (787) 281-0707
Facsimile (787) 281-0708

By: **Jorge A. Fernández-Reboredo**
USDC No. 209302
E-mail: _jfernandez@rfrpsc.com_

23

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **IN THE MATTER OF:** | **CASE NO. 09-03693 (ESL)** |
| **BORA BORA, INC.; AKA, PUERTO ESCONDIDO; AKA, DROP OUT; AKA, THE METHOD; AKA, BORA BORA** | **CHAPTER 11** |
| **Bora Bora** | |
| **BORA BORA, INC.** | **ADV. PROC. NO.:** |
| **Plaintiff** | **(PRELIMINARY AND PERMANENT INJUNCTION; VIOLATION OF P.R. LAW 75; DAMAGES FOR BREACH OF CONTRACT; DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY; AVOIDANCE UNDER 11 ACTION UNDER 11 USC §547; DAMAGES PURSUANT TO ARTICLE 1802 OF THE PR CIVIL CODE; EQUITABLE SUBORDINATION)** |
| **v.** | |
| **QUIKSILVER, INC.; AND JOHN DOE, 1 - 10** | |
| **Defendants** | |

### OSCAR JUELLE ABELLO'S DECLARATION UNDER PENALTY OF PERJURY

**TO THE HONORABLE COURT:**

**COMES NOW**, Oscar Juelle Abello, of legal age, married, resident of Guaynabo, Puerto Rico, and under penalty of perjury, pursuant to 28 U.S.C. §1746, states and affirms as follows:

1.     The foregoing circumstances are correct, and I provide this statement freely and voluntarily.

2.    That I am the President of Bora Bora Inc. and in charge of all the operations associated with this corporation.

3.    I have personal knowledge of all the factual allegations set forth in the Complaint and it has been drafted according to the information I have directly provided to the attorneys and which is available to me at this time.

4.    I have read and reviewed the allegations set forth in the Complaint and declare under penalty of perjury under the laws of the United States of America that all of the factual allegations contained therein are true and correct to the best of my personal knowledge and on the basis of the information available to me at this time.

WHEREFORE, I subscribe the present statement in San Juan, Puerto Rico, on this 23rd day of September 2009.

OSCAR JUELLE ABELLO
PRESIDENT OF BORA BORA INC.
**Debtor In Possession**

2