# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN THE MATTER OF:<br><br>BORA BORA, INC.<br>aka PUERTO ESCONDIDO; aka BORA BORA; aka DROP OUT; aka THE METHOD<br><br>Debtor | CASE NO. 09-03693 (ESL)<br><br>CHAPTER 11 |

**DEBTOR'S REPLY TO QUIKSILVER'S RESPONSE TO DEBTOR'S MOTION TO IDENTIFY THE STATUS OF THE PENDING MOTION TO EXTEND THE AUTOMATIC STAY TO ITS PRESIDENT OSCAR JUELLE**

**TO THE HONORABLE COURT:**

COMES NOW, Bora Bora Inc. as Debtor and Debtor in Possession for the above-captioned case (hereinafter referred to as Debtor), and through the undersigned attorneys and STATES and PRAYS:

1. On June 10, 2009 Debtor moved to extend the protections of the Automatic Stay to its president, Oscar Juelle. (*See* Dkt. No. 33).

2. After considerable briefing and the passage of time, the Debtor requested to learn the status of a possible decision on the matter on October 13, 2009. (*See* Dkt. No. 162). Debtor's motion to learn the status of the decision provided no new information but instead itemized the briefing on the matter to date.

3. Quiksilver responded on October 23, 2009 insinuating that the Debtor has been acting in bad faith and that its motion is now moot. (Dkt. No. 167, pp 1-2). Quiksilver's motion is plain wrong on a factual basis and is contrary to their previous filings and to logic itself.

4. First, Debtor maintains and has always maintained that its president is instrumental to its reorganization. (*See e.g.* Dkt. No. 33, pp. 4 - 8). Among the duties undertaken by its

president was an effort to identify post-petition financing.

5. In two separate updates, the Debtor notified this Court of its president's efforts to secure financing. The first such update was on August 10, 2009 (*See* Dkt. No. 106). In the first update Debtor notified the Court about negotiations initiated by its president with Westernbank to obtain post-petition financing.

6. Quiksilver responded to Debtor's First Update with mockery and condescension. Quiksilver wrote that Debtor's president "overstates his accomplishments" in trying to arrange post-petition financing. (*See* Quiksilver's Response to First Update, Dkt. No. 112, para. 8). With palpable derision, Quiksilver expressed its skepticism that Debtor's president could arrange post-petition financing. Supposedly with efforts to identify post-petition financing doomed, Quiksilver urged this Court was supposed to deny the extension of the automatic stay.

7. On August 28, 2009 Debtor's president was able to secure an offer of post-petition from Westernbank and, accordingly, Debtor notified this Court of the offer. (*See* Dkt. No. 143).

8. Unfortunately, and due substantially in part to Quiksilver's suit against its president, it took nearly two months to finalize the offer of financing. Debtor on October 21, 2009 was able to submit its motion for post-petition financing, financing that was only the result of the hard work of its president. (*See* Dkt. No. 165).

9. As Debtor noted in its motion for post-petition financing, the financing is urgently needed to purchase holiday goods. (*See* Dkt. No. 165).

10. After mocking Debtor's president's efforts to secure financing for the duration of this proceeding, Quiksilver now takes the position that because financing is secured that Debtor's president ought to be denied the protection of the stay. (Dkt. No. 167).

11. That Debtor's president has been working to reorganize the Debtor despite the interference and burdens of defending a law suit is no basis to deny him the protections of the automatic stay. Such an argument is designed to punish diligence.

12. That Debtor's president has worked to secure financing in the current credit climate is a testament to his diligence and not indicative of the insignificance of Quiksilver's suit.

13. Quiksilver's argument is a "heads I win and tails you lose" argument. If Debtor was unable to secure post-petition financing, and Quiksilver mocked the chance of any such financing coming to pass, then Quiksilver would have claimed that extension of the stay was moot. Now that Debtor has successfully secured an offer of financing, Quiksilver is happy to claim that the suit against Debtor's president has caused no distraction.

14. Quiksilver's actions all along have been designed to destroy Debtor. It abruptly terminated its relationship with Debtor in violation of Puerto Rico Law 75 (*See* Adv. Pro. 09-0207). It initially claimed that the possibility of obtaining post-petition financing was exaggerated, *see* Dkt. No. 112, but now claims that Debtor's success reveals its position to be without merit.

15. Quiksilver's position, however, is without merit.

16. In its response, Quiksilver maintains that Debtor's efforts to secure post-petition financing at a rate of "10%" was a detriment to the estate and somehow reveals Debtor's true "motivations." (Dkt. No. 167, p. 2).

18. Debtor simply notes that the interest rate requested in its motion for post-petition financing is clearly stated as 5.5%. (*See* Dkt. No. 165, para. 11, and Exhibit 1, the Loan Agreement).

18. Quiksilver's alleged interest rate is in plain error.

19. Indeed, Debtor maintains that the likely explanation for Quiksilver's erroneous interest rate

argument is that it received confidential documents from the Debtor through counsel for the Creditors' Committee. In a preliminary DRAFT that Debtor shared with counsel for the Creditors' Committee on a CONFIDENTIAL basis, since it was not a final draft, the loan agreement had erroneously referred to an interest rate of 10%. Debtor of course corrected the draft and submitted the correct rate of 5.5% to the Court. Nevertheless, Quiksilver used the information in this confidential draft that it received from counsel for the Creditors' Committee to challenge Debtor's position, albeit on an erroneous basis.

20. Regardless, Quiksilver's response to Debtor's motion collapses into self-contradictory assertions.

21. The material facts are the same. Almost five months ago, Debtor moved to extend the automatic stay to its president because Quiksilver's suit was in fact a suit against Debtor for pre-petition debt. Further, Debtor needs the undivided attention of its President to assist it in its reorganization efforts. Despite the suit, Debtor's president has worked to secure post-petition financing – a feat that was once mocked by Quiksilver but now is used as a justification to further harm Debtor and advance its suit against Debtor's president.

22. Regardless, Debtor renews its request for this Court to issue the extension of the Automatic Stay and renews its request to learn the status of such a decision. Debtor's president's duties to implement the reorganization of the Debtor do not end with the approval of post-petition financing or with the approval of the Disclosure Statement. His efforts and energies are needed just as much now as they were before the motion for post-petition financing.

WHEREFORE, Debtor again respectfully requests that this Court notify the Debtor of the status of its decision regarding whether to extend the Automatic Stay.

**Respectfully Submitted**,

In San Juan, Puerto Rico, this 28th day of October, 2009.

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties appearing in said system, as listed below, including the U.S. Trustee, counsel for Quiksilver, and counsel for the Unsecured Creditors' Committee.

                                   **C. CONDE & ASSOC.**
                                   *S/ Carmen Conde Torres*
                                   Carmen Conde Torres, Esq.
                                   USDC 207312
                                   254 San José Street, 5th Floor
                                   Old San Juan, Puerto Rico  00901
                                   Telephone:  787-729-2900
                                   Facsimile:  787-729-2203
                                   E-Mail:  *condecarmen@microjuris.com*

ANTONIO A ARIAS LARCADA    aaa@mcvpr.com, mb@mcvpr.com
YANIRE BATISTA ORAMA    ybo@cmtplaw.com
IVAN M CASTRO ORTIZ    icastro@alblegal.net
SONIA COLON COLON    soniaecolon@gmail.com
RAMON COTO OJEDA    rco@cmtplaw.com, wmm@cmtplaw.com;ybo@cmtplaw.com
NAYELI DIAZ FEBLES    bankruptcyjusticia.gobierno.pr@gmail.com
ELDIA M DIAZ OLMO    diazolmo@villamil.net
JORGE A FERNANDEZ-REBOREDO    jfernandez@rfrpsc.com
CARMEN PRISCILLA FIGUEROA-BELL    cfigueroa@crimpr.net, adavila@crimpr.net
ALEXIS FUENTES HERNANDEZ    alex@fuentes-law.com, afuentes1@msn.com
LAWRENCE J HILTON    lhilton@hewittoneil.com, pgarnica@hewittoneil.com
MONSITA LECAROZ ARRIBAS    ustpregion21.hr.ecf@usdoj.gov
JOSE L LUGO MERCADO    jlugo@rfrpsc.com
LUIS C. MARINI BIAGGI luis.marini@oneillborges.com, docket_clerk@oneillborges.com;rebeca.rodriguez@oneillborges.com
PATRICK D. O'NEILL    pdo@go-law.com
STATE INSURANCE FUND CORPORATION    Alejandro.Suarez@cfse.gov.pr
ALEJANDRO A SUAREZ CABRERA    Alejandro.Suarez@cfse.gov.pr, aasuarezcabrera@yahoo.com
RAMON TORRES RODRIGUEZ    rtorreslaw@prtc.net, secrtlaw@torresrodlaw.com
US TRUSTEE    ustpregion21.hr.ecf@usdoj.gov

FERNANDO J VALDERRABANO    fvalderrabano@mocpr.com
YASMIN ROCIO VAZQUEZ VAZQUEZ    quiebras@bppr.com, yavazquez@bppr.com
MYRA MITZEL VELEZ PLUMEY    myra_velez@hotmail.com, myra.velez@gmail.com