IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN THE MATTER OF: | Case No. 09-03693 (ESL) |
| BORA BORA, INC.<br>aka PUERTO ESCONDIDO; aka BORA BORA;<br>aka DROP OUT; aka THE METHOD | CHAPTER 11 |
| Debtor. | |

## QUIKSILVER, INC.'S OBJECTION TO DEBTOR'S DISCLOSURE STATEMENT

**TO THE HONORABLE COURT:**

COMES NOW, Quiksilver, Inc. (hereinafter, "Quiksilver"), through its undersigned counsel, hereby submits its Objection to the Debtor's Disclosure Statement.

## I.
## INTRODUCTION.

The Debtor's Disclosure Statement cannot be approved because, among many other problems, it describes a reorganization plan (the "Proposed Plan") that is unconfirmable on its face. The Proposed Plan clearly treats Quiksilver's unsecured claim materially different from other claims in the same class, in violation of Section 1123(a)(4) of the Bankruptcy Code. The Proposed Plan also improperly attempts to discharge Oscar Juelle's personal debts through an improper injunction. The Proposed Plan also violates the absolute priority rule in that it allows the existing shareholders to retain 100% of their equity interests while paying unsecured creditors 15% over seven years. Buried in a note on page

70 of the Disclosure Statement is the revelation that Mr. Juelle's brother, Alex Juelle, will be permitted to walk away from a $425,000 insider debt owed to the Debtor, but Alex Juelle will still keep 100% of his equity in the reorganized debtor. While the Proposed Plan is unquestionably attractive to Mr. Juelle and to his brother and the other insiders who will strip 85% of the debt while keeping their equity interests, it is not confirmable and the Court should not waste the estate's resources undergoing a solicitation process that cannot result in a confirmed plan.

## II.
## LEGAL ARGUMENT.

### A. The Court Should Not Approve A Disclosure Statement That Describes A Patently Unconfirmable Plan.

If a disclosure statement describes a plan that is so "fatally flawed" that confirmation is "impossible," the court should exercise its discretion to refuse to consider the adequacy of disclosures. *In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990); *In re Monroe Well Service, Inc.*, 80 Bankr. 324 (Bankr. E.D. Pa. 1987); *In re Pecht*, 57 B.R. 137 (Bankr. E.D. Va. 1986). "Such an exercise of discretion is appropriate because undertaking the burden and expense of plan distribution and vote solicitation is unwise and inappropriate if the proposed plan could never legally be confirmed." In re Eastern Maine Electric Cooperative, Inc., 125 B.R. 329, 333 (Bankr. D. Maine 1991). *See In re Bjolmes Realty Trust*, 134 B.R. 1000, 1002 (Bankr. D. Mass. 1991) ("It is permissible . . . for the court to pass upon confirmation issues where, as here, it is contended that the plan is so fatally and obviously flawed that confirmation is impossible.") (citing *In re*

*Eastern Maine Electric Co-op., Inc.*, 125 Bankr. 329, 333 (Bankr. D. Me. 1991); *In re Cardinal Congregate I*, 121 B.R. at 764; *In re Monroe Well Service, Inc.*, 80 B.R. at 332.))

### B. The Debtor's Disclosure Statement Describes A Plan That Is Fatally Flawed And Unconfirmable On Its Face.

#### 1. The Proposed Plan Violates Section 1123(a)(4) In That The Treatment Of Quiksilver's Claim Is Substantively Different From All Other Claims In Class 8.

To be confirmed, the Code requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). Here, the proposed Plan obviously (and intentionally) treats Quiksilver's claim differently from other claims in Class 8. The Proposed Plan provides the following treatment for the claims of general unsecured creditors:

> *CLASS 8 GENERAL UNSECURED CREDITORS*
>
> This class shall consist of general unsecured creditors with a claim of $5,001 or more. These parties are primarily suppliers listed by the Debtors and any other party who have filed a general unsecured proof of claim, including Quiksilver. Payments made to Quicksilver[1] under the plan are to be applied on prorate basis to all of its claims. This class will be paid 15% of their claim over the course of 72 months commencing one year from the effective date with funds generated from operations as per payment schedule. In the event the Debtor prevails in its claims against Quicksilver and receives proceeds from Quiksilver, it shall distribute the proceeds to the creditors in this class after payment in full to the senior classes 1, 6 and 7. In the event the Debtor prevails in its claims against Quiksilver, Quiksilver will receive distribution of the funds only pursuant to the terms of the judgment and only after all other creditors in this class are paid. This class is impaired.

---

[1] The Debtor repeatedly misspells "Quiksilver," which has no "c."

The Debtor makes no attempt to disguise the fact that it intends to treat Quiksilver's claim in a materially different manner than other unsecured claims. First, the Debtor improperly conditions payment of Quiksilver's claim on the outcome of separate litigation. That is improper.[2] It is hornbook law that Quiksilver's claim, if allowed, must be treated like all other claims in Class 8. If the Debtor believes it has grounds to treat Quiksilver's claim differently, it must classify the claim separately.

Indeed, the last sentence of the provision essentially subordinates Quiksilver's claim. If the Debtor "prevails" in its claims against Quiksilver—regardless of how trivial the victory or how nominal the award—Quiksilver would receive nothing on its claim for at least seven years, and then only if all the remaining Class 8 claims are paid.

This patently different treatment violates Section 1134(a)(4) and renders the Proposed Plan unconfirmable.

### 2. The Proposed Plan Improperly Enjoins Actions Against The Debtor's President.

The Proposed Plan also includes improper injunctions under Section 524. The plan purports to enjoin actions against not only the Debtor, but also against its President, Oscar Juelle. (See Proposed Plan, § 13.2). The proposed injunction is the latest transparent attempt by Mr. Juelle to use Bora Bora's Chapter 11 as a means to discharge his personal liabilities, including his personal debt to Quiksilver and possible claims for breach of

---

[2] The only claim the Debtor has that would affect payment of Quiksilver's allowed claim would be the avoidance action under Section 547 of the Bankruptcy Code, which would be subject to Section 502(d). However, that would be true of all creditors in Class 8 who received potentially avoidable transfers and does not justify singling out Quiksilver.

fiduciary duty to Bora Bora's creditors, without filing for personal bankruptcy.[3] Such an injunction is improper and renders the Proposed Plan unconfirmable.

The First Circuit in *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973, 983-84 (1st Cir. 1995), noted that only in "extraordinary circumstances" may a bankruptcy court grant injunctive relief to protect non-debtors; the extraordinary relief would be appropriate when injunctive relief would be "essential to enable the formulation and confirmation of a reorganization plan . . . ." *Id.* at 979-80. As an example of when injunctive relief might be "essential," the First Circuit cited the protection of non-debtors who would contribute to funding the plan only on the condition that they be insulated "from potential post-confirmation lawsuits arising from their prepetition relationship with the chapter 11 debtor." *Id.*

The First Circuit formulated the following test to determine whether "extraordinary circumstances" existed that would justify the issuance of an injunction for third-party claims:

(1) An identity of interests between the debtor and the third-party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against he [sic] debtor or will deplete the assets of the estate;
(2) The non-debtor has contributed substantial assets to the reorganization;
(3) The injunction is essential to the reorganization . . . .;

---

[3] The Debtor fails to adequately disclose the circumstances of Alex Juelle's $425,000 "bad debt" to Bora Bora. (See Note 2 to Liquidation Analysis.) Given that Bora Bora has been insolvent, or in the vicinity of insolvency, for several years, Oscar Juelle's approval of an insider transaction with his now "insolvent" brother raises serious questions about Oscar Juelle's breach of his fiduciary duty to Bora Bora's creditors. *See, e.g., Pereira v. Cogan*, 294 B.R. 449, 519 (S.D.N.Y. 2003) (insiders owe creditors fiduciary duties when the corporation is in the vicinity of insolvency).

(4) A substantial majority of the creditors agree to such injunction, specifically, the impacted class, or classes, has "overwhelmingly" voted to accept the proposed plan treatment; and

(5) The plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

*Id.* (citing *In re Master Mtg. Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994)). None of the "extraordinary circumstances" is present in this case.

      a.    *There Is No Identity Of Interests Between The Debtor And Mr. Juelle That Would Justify An Injunction.*

The "identity of interests" test is intended to protect the debtor from claims brought by third-parties who have legal rights to recover from the Debtor for indemnity or contribution claims arising from their prep-petition relationship with the debtor. This factor is easily resolved. The Debtor has made no showing of how it could possibly be liable for any claims brought against Mr. Juelle, but even if it had, the Proposed Plan clearly would bar any such claims. Article VI of the Proposed Plan clearly provides that any claim, the proof of which was not timely filed, is barred. Mr. Juelle filed no proof of claim, and the Debtor's Schedules reflect only a $254,491 claim based on Mr. Juelle's alleged "lender" status. Thus, any indemnity or contribution claim Mr. Juelle would have had is now barred (and would be subject to disallowance even if it had been filed, as a contingent claim under Section 502(e)(1)(B) of the Bankruptcy Code).

      b.    *Mr. Juelle Has Not Contributed Substantial Assets (Or Any Assets) To The Reorganization.*

It is undisputed that Mr. Juelle (despite repeated representations that he "very likely will provide capital to the Debtor") has yet to provide a single dollar of financing, either in the form of a loan or a capital contribution. And if there were any doubt about Mr.

Juelle's plans to provide such financing in the future, the Proposed Plan is quite clear about the amount of loans and capital contributions Mr. Juelle can be counted on to provide—nothing. The Proposed Plan also makes clear that Mr. Juelle intends to continue collecting $192,000 annually to manage the three remaining shops.

        c.     *The Injunction Is Not Essential To The Reorganization.*

The Disclosure Statement does not even attempt to explain how an injunction protecting Mr. Juelle is somehow "essential" to the Debtor's reorganization. In fact, neither the injunction nor Mr. Juelle himself is essential to the Debtor's reorganization. Recognizing that the Debtor will react negatively to any criticism of Mr. Juelle and will accuse Quiksilver of "personal attacks," an objective observer should seriously question whether the Debtor's already slim hopes of a successful reorganization should be entrusted to Mr. Juelle. From Quiksilver's perspective—having seen the Debtor squander more than $2.2 million of Quiksilver's credit while Mr. Juelle was at the helm—the Debtor would be better served using the $192,000 to bring in a retail professional with a better track record to manage the three remaining shops.

        d.     *A Substantial Majority Of The Creditors Agree To Such Injunction, Specifically, The Impacted Class, Or Classes, Has "Overwhelmingly" Voted To Accept The Proposed Plan Treatment.*

This factor does not apply. There has been no voting on the Proposed Plan, and there can be no voting on the plan because it is so patently flawed. Further, given that Quiksilver (one of the largest, if not the single largest unsecured creditor) clearly would vote against the Proposed Plan, it could never be "overwhelmingly approved" by the unsecured creditor class.

e. *The Plan Does Not Provide A Mechanism For The Payment Of All, Or Substantially All, Of The Claims Of The Class Or Classes Affected By The Injunction.*

There is no dispute that the Proposed Plan does not meet the final *Ropes & Gray* factor. Far from paying all, or substantially all, of the claims of the classes affected by the injunction, the Debtor proposes to pay at best 15% of the claims over a period of seven years. The injunction purporting to enjoin claims against Mr. Juelle is therefore improper. As a result, the Proposed Plan is unconfirmable.

### 3. The Proposed Plan Violates The Absolute Priority Rule.

The Debtor requests in Article IX that the Court confirm the Proposed Plan under the "cramdown" provisions of Section 1129. However, the fact that Mr. Juelle and the other existing shareholders will retain their equity interests without paying unsecured claims in full and without making any new capital contribution clearly defeats any argument that the plan is "fair and equitable." As to a dissenting class of impaired unsecured creditors, a plan may be found to be "fair and equitable" only if the allowed value of the claim is to be paid in full, 11 U.S.C. § 1129(b)(2)(i), or in the alternative, if the claim is not paid in full, no junior class may receive any interest. That condition is the core of what is known as the "absolute priority rule." *See generally Bank of Am. Nat'l Trust & Sav. Assoc. v. 203 N. LaSalle St. Partnership*, 526 U.S. 434, 442, 119 S. Ct. 1411, 143 L. Ed. 2d 607 (1999). The Proposed Plan unquestionably violates the absolute priority rule and cannot be confirmed under any circumstances.

# III.
# CONCLUSION.

For all the foregoing reasons, Quiksilver prays for relief as follows:

1. That the Debtor's Disclosure Statement be rejected; and

2. For such other and further relief as the Court deems just and proper.

I HEREBY CERTIFY that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to all parties in the system.

DATED: November 24, 2009

O'NEIL LLP
LAWRENCE J. HILTON

MCCONNELL VALDÉS LLC
ANTONIO A. ARIAS-LARCADA


By: S/Antonio A. Arias-Larcada
ANTONIO A. ARIAS-LARCADA
U.S.DC. NO. 204906
McConnell Valdés LLC
270 Muñoz Rivera Ave.
San Juan, Puerto Rico 00918
Direct Dial: (787) 250-5604
Fax: (787)759-2771
aaa@mcvpr.com

Attorneys for QUIKSILVER, INC.