IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                  :      CASE NO. 09-03693

BORA BORA INC.       :

    Debtor         :      CHAPTER 11

_____ :

OPINION AND ORDER

This case is before the court on Bora Bora Inc.'s (the "Debtor") motion requesting that the protection of the automatic stay be extended to its president, Mr. Oscar Juelle, filed on June 10, 2009 (the "Motion to Extend Stay")(Docket No. 33), and the opposition to the same filed by Quicksilver on July 1, 2009 (Docket No. 80). The Debtor filed a reply on July 8, 2009 (Docket No. 88) supplemented on August 10, 2009 (Docket No. 106) and Quicksilver filed a response to Debtor's supplement on August 14, 2009 (Docket No. 112). The Debtor filed a reply to Quicksilver's response on August 17, 2009 (Docket No. 119) and a second supplement on August 28, 2009 (Docket No. 143). On October 13, 2009 the Debtor filed a request for determination (Docket No. 162) and Quicksilver filed a response to that request on October 23, 2009 (Docket No. 167). At a hearing held on August 10, 2009 the Debtor informed that the issue had been fully briefed and the court took the matter under advisement (Docket No. 109). In essence, the Debtor argues that Mr. Juelle and the Debtor are "so inextricably bound and so closely identified with one another" that a collection action against Mr. Juelle for a pre-petition debt equals to a collection action for a pre-petition debt against the Debtor and that Quicksilver's collection efforts against Mr. Juelle are just a tactic to pressure the Debtor to make payments on its pre-petition debt. For the reasons stated below the Motion to Extend Stay is hereby denied.

Background

On May 6, 2009 the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code and since that date it has been acting as "debtor in possession". In its Motion to Extend Stay the Debtor represents that Mr. Juelle is its founder, president and one of its primary lenders, managing the day-to-day operations and responsible for devising and implementing a

reorganization plan under Chapter 11.  The Debtor states that Mr. Juelle  has executed personal guarantees in favor of various of its creditors including Quicksilver[1].  The Debtor alleges that Mr. Juelle's personal guaranty in favor of Quicksilver was for the sole benefit of the Debtor and that he consented to the guaranty provided his liability would not exceed that of the Debtor.  On June 3, 2009 Quicksilver filed a complaint for breach of guaranty agreement against Mr. Juelle before the U.S. District Court for the Central District of California which prays for an amount equal to that of the pre-petition claim Quicksilver holds against the Debtor, that is, $1.5 million approximately.

The Debtor argues that this case presents the unusual circumstances required for the application of the automatic stay to a third party non-debtor, in this case, Mr. Juelle.  The Debtor argues that Mr. Juelle's identity is so intertwined with that of the Debtor that the Debtor may be said to be the real party defendant, and because Mr. Juelle is so essential to the Debtor's reorganization, the stay must be extended to him in order to protect the Debtor's efforts to reorganize.  The Debtor further argues that Mr. Juelle has no independent obligation to Quicksilver and given the close relationship between the Debtor and its president, Quicksilver's efforts to collect against Mr. Juelle is nothing more than an effort to collect from the Debtor circumventing the automatic stay provisions of the Bankruptcy Code.  Lastly, the Debtor states that if Quicksilver's action is allowed to proceed  Mr. Juelle will be irremediably distracted and will not be able to dedicate his full attention to the reorganization of the Debtor's case.  According to the Debtor Mr. Juelle is uniquely suited to guide the Debtor through its reorganization due to his knowledge of the local marketplace, rental agreements, consumer buying patterns and other related information.  The Debtor posits that the loss of Mr. Juelle's efforts will impair if not destroy the ability of the Debtor to reorganize and furthermore any judgment against him will limit the funds available to be lent to the Debtor in order to fund its plan of reorganization as Mr. Juelle is a potential financier of the Debtor's reorganization.

---

[1] Copy of a promissory note for $2,000,000 dated July 20, 2007 signed by Mr. Juelle as president of Bora Bora, Inc. and a personal guaranty also dated July 20, 2007 signed by Mr. Juelle as guarator, both with Quicksilver as payee, are attached to the Motion to Extend Stay.

In its response Quicksilver argues that the Debtor's failure to file an adversary proceeding bars this court from granting the injunctive relief requested, as an injunction requires an adversary proceeding. Furthermore, the Debtor does not carry its burden of persuasion as to all requirements warranting the extraordinary and drastic remedy of an injunction. Quicksilver cites this court in In re Codfish, 97 B.R. 132, 135 (Bankr. D.P.R. 1988) by stating that "if a creditor is to be enjoined and stayed from prosecuting an action against a codebtor pursuant to 11 U.S.C. § 105(a) the movant must establish through clear and convincing evidence that the estate would be substantially and adversely affected by the continuance of such action." Quicksilver maintains that the Debtor provides no evidence whatsoever to support its motion, let alone carry the heavy burden warranting the extraordinary relief it seeks. And even if the Debtor's assertions were supported by evidence they would not justify the application of the automatic stay to Mr. Juelle. Quicksilver posits that a stay extension request is deemed a request for a preliminary injunction and thus the Debtor must establish the four standard factors to obtain the injunctive relief, to wit, 1) irreparable injury to the Debtor if the injunction is not granted, 2) that such injury outweighs any harm which granting injunctive relief would inflict on a defendant, 3) likelihood of success on the merits and 4) that the public interest will not be adversely affected by the granting of the injunction. Quicksilver argues that the Debtor cannot make the required showing of irreparable harm and has not shown the likelihood of success on the merits as the Debtor must prove the probability of a successful plan of reorganization and it has failed to do so.

In response to the Quicksilver's arguments the Debtor argues that caselaw establishes that the determination of whether a third party non-debtor is protected by the automatic stay may be issued within an adversary proceeding or within a contested matter. In response to Quicksilver's argument that the Debtor does not carry its burden of persuasion as to all requirements warranting the extraordinary and drastic remedy of an injunction, the Debtor argues that it has been uncontested that Mr. Juelle is the Debtor's president and is the person responsible for the Debtor's operations including the formulation of the reorganization plan, and thus the Debtor does not need to prove that. The Debtor again concludes that Quicksilver's collection action against the Debtor's president is part of its efforts to coerce the Debtor into paying its pre-petition debt. Later

in the supplement to the Motion to Extend Stay the Debtor states that Quicksilver admitted that it equates Mr. Juelle with the Debtor when in an answer to an interrogatory they stated that they chose to terminate its business relationship with the company Mr. Juelle controls because it no longer wished to be associated with Mr. Juelle's character. From this statement the Debtor concludes that Quicksilver's suit against Mr. Juelle was brought as an effort to coerce payment from the Debtor on its pre-petition debt and thus the suit must be stayed as it is, in fact, a suit against the Debtor. The Debtor attached a sworn declaration by Mr. Oscar Juelle, which states, in essence, that he has spent considerable time and effort in the reorganization of the Debtor and after the Quicksilver's suit was filed these efforts along with money have been diverted into defending the suit. He states that he has been able to obtain post-petition financing from Westernbank considering himself, through other companies, the Debtor's lender, thus he has been willing to use his own funds and property to help guarantee funding for the benefit of creditors. He concludes that if the suit is allowed to proceed the Debtor would be denied his time and funds that would otherwise be available to the creditors.

Quicksilver responds that the guaranty agreement executed between Quicksilver and Mr. Juelle (the "Guaranty Contract") provides that the guarantor (Mr. Juelle) has a financial interest in the customer (the Debtor) and for business purposes significantly beneficial to Mr. Juelle wishes that Quicksilver continue to extend credit to the Debtor, and that the obligations of the guarantor (Mr. Juelle) are independent of the obligations of the customer (the Debtor). Furthermore, Quicksilver argues that even though Mr. Juelle states that the litigation with Quicksilver is causing tremendous hardship and distraction for him with respect to his duties to operate the Debtor and seek post-petition financing, he has time to devote to the new round of litigation the Debtor proposes to file against Quicksilver for alleged Act 75 violations.

In subsequent motions the Debtor informed the court that through Mr. Juelle's efforts the Debtor secured post-petition financing from an entity named Calacostas, Corp. Calacostas lent the Debtor $400,000.00 at an annual interest rate of 5.5%, obtaining a lien on the Debtor's inventory and trademarks. It does not appear that Mr. Juelle committed any of his personal assets in order to obtain the referred secured post-petition financing for the Debtor.

The Disclosure Statement filed on November 3, 2009 provides that Mr. Juelle is the president and CEO of the Debtor deriving a salary of $16,000 per month, plus car allowance and health insurance (Docket No. 173).  The Disclosure Statement further provides that funding of the plan of reorganization will come from the operations of the business and the post-petition secured financing from Calacostas,  on which the monthly installments have administrative priority status as approved by the court.

The Guaranty Contract between Quicksilver and Mr. Oscar Juelle, copy of which is attached to the Motion to Extend Stay, provides in its pertinent parts as follows:

THIS PERSONAL GUARANTY (this "Guaranty") is made on July 20, 2007, by Oscar Juelle  ("Guarantor"), for the benefit of Quicksilver, Inc. ("Quicksilver"), with reference to the following facts:

B.  Guarantor has a financial interest in Customer and, for business reasons significantly beneficial to Guarantor, desires that Quicksilver continue to extend credit to Customer.

NOW, THEREFORE, in consideration of the foregoing, and for other good reason and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Guarantor agrees as follows:

(8) The obligations of Guarantor hereunder are independent of the obligations of Customer.  A separate action or actions may be brought and prosecuted against Guarantor without first proceeding against Customer or any other person or any security held by Quicksilver and without pursuing any other remedy and without joining Customer or any other person in any such action or actions.  Any payment of any Indebtedness or other act which shall toll any statute of limitations applicable thereto shall also operate to toll such statute of limitations applicable to Guarantor's liability hereunder.

Discussion

The Debtor requests that this court enjoin Quicksilver from continuing a collection action against Mr. Oscar Juelle based on the Guaranty Contract executed between Mr. Juelle and Quicksilver.  Section 362(a)(1) provides for an automatic stay of any judicial proceeding against the debtor, thereby protecting the debtor and not prohibiting actions against non debtor third parties or co-defendants. 11 U.S.C. 362(a)(1)[2]; In re S.I. Acquisition, Inc. 817 F.2d 1142, 1147

---

[2]  11 U.S.C. 362(a)(1) provides that

Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of -

5

(5th Cir. 1987). The automatic stay is imposed by operation of law and does not require an injunction but it is clear that the statutory language of 11 U.S.C. § 362 imposes the automatic ex parte injunction only as to actions against the debtor. In re Supermercado Gamboa, 68 B.R. 230, 232 (Bankr. D.P.R. 1986).

*Extension of the stay pursuant to 11 U.S.C. § 362(a) - Procedure*

The power of the bankruptcy courts to enjoin certain actions not subject to the automatic stay, such as an action against non debtor parties, has been recognized, when such action is interfering improperly with the purposes of the bankruptcy law or the debtor's reorganization efforts. A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994 (4th Cir. 1986). Although called an extension of the automatic stay provisions of the Bankruptcy Code to non-debtor parties, these are in fact injunctions issued by a bankruptcy court under 11 U.S.C. § 105(a), after determining that the situation requires it in order to protect the interests of the bankruptcy estate. In re Cincom iOutsource, Inc., 398 B.R. 223, 227 (Bankr. S.D. Ohio, 2008) citing Patton v. Bearden, 8 F.3d 343 (6th Cir. 1993); "Under the Bankruptcy Act, it was believed that the bankruptcy court lacked jurisdiction to issue such an injunction. Under the Code, broad injunctive power is available under section 105, and the issue appears to be one directed to the discretion of the court rather than to its jurisdiction." 3 Alan N. Resnick and Henry J. Sommer, Collier on Bankruptcy, ¶ 362.04 (15th Ed. Rev'd 2005). In the case of In re Philadelphia Newspapers, LLC, 407 B.R. 606 (E.D. Pa., 2009) the court explained that in evaluating the issuance of a preliminary injunction extending the section 362(a) stay protection to non-debtors, appellate courts must analyze whether the bankruptcy court properly extended the section 362(a) stay to the non-debtors and whether the court exercised its discretion properly in issuing an injunction pursuant to 105(a). This is so because section 105(a) is not a repository of substantive rights but allows the court to issue an

---

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding **against the debtor** that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

Emphasis ours.

order when "necessary or appropriate" to carry out the provisions of the Bankruptcy Code, in this case, Section 362(a). The fact that courts have combined the analysis has created confusion, but both steps of the inquiry must be satisfied in order for the injunction to be issued. Id. at 616.

Paragraph 17 of Debtor's reply filed on July 8, 2009 (Docket No. 88) provides as follows:

> Regardless, no court has required that the issue of whether to grant the protection of the automatic stay to parties who are not the debtor be raised through an adversary proceeding. One court contends that using the term "stay" interchangeably with "injunction" has led to unnecessary confusion for some practitioners. *In re Philadelphia Newspapers, LLC,* U.S.Dist. LEXIS 56245 * 7 (E.D. Pa., July 2, 2009). According to *Philadelphia Newspapers* the key doctrine to be understood is that 11 USC § 362 grants Bankruptcy courts the power *to enjoin* lawsuits against non-debtors under certain circumstances–regardless of whether one considers this power a "stay" or an "injunction." *Id.* Accordingly, this issue may be submitted through either an adversary proceeding or a contested matter.

Here, the Debtor suggests that when granting the protection of the automatic stay to non-debtors the courts need only apply section 362(a). The Debtor is misinterpreting the holding in the case of In re Philadelphia Newspapers, LLC, U.S.Dist. LEXIS 56245 * 7 (E.D. Pa., July 2, 2009). As discussed above, the Philadelphia Newspapers court explained that in evaluating the issuance of a preliminary injunction extending the section 362(a) stay protection to non-debtors, the courts will analyze **both** whether the extension of the stay under section 362(a) is proper and whether the issuance of an injunction under 105(a) is proper, which means that in order for the injunction to be issued the requirements of both statutes must be satisfied.

> In evaluating the issuance of the preliminary injunction extending the protection of section 362(a) to Non-Debtor third parties, the Court will undertake a three-step analysis.[FN4] The Court will determine, first, whether the Bankruptcy Court had jurisdiction to issue the injunction. Second, whether the Bankruptcy Court properly extended the section 362(a) stay to the Non-Debtors. Finally, whether the Bankruptcy Court properly exercised its discretion in issuing an injunction, pursuant to section 105(a), enjoining suit against Non-Debtors.
>
> Courts have often conflated the analysis. This has led to confusion.

Philadelphia Newspapers, 407 B.R. at 610 (citations omitted).

In paragraph 19 of the reply (Docket No. 88) the Debtor alleges that the court in the case of In re M.J.H. Leasing, Inc., 328 B.R. 363 (Bankr. D.Ma. 2005) held that the issue before us was properly raised in a contested matter. Again, the Debtor is misinterpreting such decision. In M.J.H. Leasing the issue before the court was an objection to the disclosure statement because it

7

contained a provision for the discharge and release of the principals of the debtors. The court reviewed cases involving the injunction of actions against third-party non-debtors raised through adversary proceedings as it found such cases were relevant in view of similar legal and factual circumstances. Id. at 370. However, at no point did the M.J.H. Leasing court insinuate that a request to extend the stay to third-party non-debtors could be raised outside an adversary proceeding.

A request for injunctive relief must be brought by adversary proceeding. Fed. R. Bankr. P. 7001(7); Cincom, 398 B.R. at 227 citing In re Swallen's Inc., 205 B.R. 879, 880 (Bankr. S.D. Ohio 1997)(injunctive relief was denied for failure to request it through adversary proceeding); In re Nasco P.R., Inc., 17 B.R. 35, 38 (Bankr. D.P.R. 1990)("A party wishing to invoke the Court's injunctive power under Section 105(a) must file an adversary proceeding... and must follow the traditional standards for the issuance of an injunction.") While it is true that 11 U.S.C. § 105(a) gives the bankruptcy courts broad power to issue any order that is "necessary or appropriate" to the reorganization effort, "this broad authority does not allow the bankruptcy court to apply a less stringent standard for granting injunctive relief for the benefit of non-debtor defendants than is traditionally required for the issuance of any injunction." Supermercado Gamboa, 68 at 232-233 citing Matter of Electronic Theatre Restaurants Corp., 53 B.R. 458 (N.D. Ohio 1985); A.H. Robins, 788 F.2d at 1008; Philadelphia Newspapers, 407 B.R. at 616; Codfish, 97 B.R. at 165.

The broad injunctive powers under 11 U.S.C. § 105(a) should be used sparingly. In re Lazarus Burman Assoc., 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993); In re Codfish, 97 B.R. 132 (Bankr. D.P.R. 1988); In re Criadores de Yabucoa, Inc., 75 B.R. 96 (Bankr. D.P.R. 1987). Thus, a preliminary injunction is an extraordinary and drastic remedy which should only be granted when the movant has carried its burden through clear and convincing evidence. Philadelphia Newspapers, 407 B.R. at 616; Cincom, 398 B.R. at 227. This court clearly set forth the standard to grant an injunction under 11 U.S.C. § 105(a) as follows:

> In the First Circuit, as elsewhere, the four standard factors that the debtor corporation would have to establish to obtain injunctive relief are as follows: (1) That the debtor would suffer irreparable injury if the injunction were not granted; (2) That such injury outweighs

any harm which granting injunctive relief would inflict on a defendant; (3) That the debtor has exhibited a likelihood of success on the merits; (4) That the public interest will not be adversely affected by the granting of the injunction.

Codfish, 97 B.R. at 135 citing Supermercado Gamboa, 68 B.R. at 232; Lazarus Burman, 161 B.R. at 901.

In summary, a request to extend the automatic stay provisions of section 362(a) to a non-debtor is an action for injunctive relief and should be initiated as an adversary proceeding. Fed. R. Bankr. P. 7001(7).

*Injunction under 11 U.S.C. § 105(a)*

Section 105(a) of the Bankruptcy Code provides the court with the authority to exercise its equitable powers when necessary or appropriate to facilitate the implementation of other provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). "[A]lthough § 105(a) does not itself create a private right of action a court may invoke § 105(a) if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the Code." In re Nosek, 544 F.3d 34, 43 (1st Cir. 2008)(citations omitted). However, § 105(a) may not be invoked "where the result of its application would be inconsistent with any other Code provision or it would alter other substantive rights set forth in the Code. Id. "The issuance of an injunction that restrains creditors from enforcing their claims against nondebtors in non-bankruptcy fora is an exception to the general principle that to enjoy the benefits of bankruptcy a recipient needs to suffer the burdens." In re Saxby's Coffee Worldwide, LLC, 2009 WL 4730238 at *5 (Bankr. E.D.Pa.)(citation omitted).

The four standard factors that the Debtor would have to establish to obtain injunctive relief restraining an action against Mr. Juelle are as follows: (1) that the debtor would suffer irreparable injury if the injunction were not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on Quicksilver; 3) that the debtor has exhibited a likelihood of success on the merits, which means in this context a reasonable likelihood of a successful reorganization; (4) that the public interest will not be adversely affected by the granting of the

injunction which requires a balancing of the public interest in successful bankruptcy reorganizations with other public interests. Saxby's Coffee Worldwide, LLC, 2009 WL 4730238 at *6 (citation omitted); Codfish, 97 B.R. at 135 citing Supermercado Gamboa, 68 B.R. at 232; Lazarus Burman, 161 B.R. at 901. The Debtor failed to meet its burden.

"Irreparable injury in the preliminary injunction context means an injury that cannot adequately be compensated for either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy." Rio Grande Community Health Center, Inc. v. Rullan, 397 F.3d 56 (1st Cir. 2005). To establish irreparable harm the movant does not need to show that the injunctive relief will be fatal to the business, only that its legal remedies are inadequate. Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996). "If the plaintiff suffers a substantial injury that is not accurately measurable or adequately compensable by money damages, irreparable harm is a natural sequel." Id. For example "harm to goodwill, like harm to reputation, is the type of harm not readily measurable of fully compensable in damages-and for that reason, more likely to be found "irreparable"." K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 915 (1st Cir. 1989). The irreparable harm must be "neither remote nor speculative, but actual and imminent." In re Dunes Hotel Associates, 1997 WL 33344279 *4 (Bankr.D.S.C.1997), citing Dan River, Inc. v. Icahn, 701 F.2d 278, 284 (4th Cir.1983). "Mere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay, are not enough." Cunningham v. Adams, 808 F.2d 815, 821 (11th Cir.1987).

The Debtor failed to show that it would suffer irreparable injury should the collection against Mr. Juelle be allowed to proceed. The Debtor argues that the action will divert Mr. Juelle's attention from the business. But the extent of which or the specific effect this distraction would have on the Debtor was not alleged with specificity. Thus this court cannot conclude that the Debtor will suffer any injury in the event the action is not stayed.

Having failed to meet the first of the four-prong injunction standard we need go no further, the Debtor's request for an injunction staying Quicksilver's action against Mr. Juelle must be denied.

*Extension of the stay pursuant to 11 U.S.C. §362(a) - "Unusual Circumstances"*

It is uncontested that Mr. Juelle is the president and founder of the Debtor, responsible for the day-to-day operations and responsible for devising and implementing the reorganization plan under Chapter 11. The Debtor argues that Mr. Juelle's identity is so intertwined with that of the Debtor that the Debtor may be said to be real party defendant, so the stay must be extended to Mr. Juelle to protect the Debtor's interests. The Debtor further states that Mr. Juelle has no independent obligation to Quicksilver and if the action is allowed to proceed Mr. Juelle will be distracted and will not be able to dedicate his full attention to the reorganization of the Debtor's case. According to the Debtor Mr. Juelle is uniquely suited to guide the Debtor through its Chapter 11 due to his knowledge of the local marketplace, rental agreements, consumer buying patterns and other related information, furthermore, a judgment against him will limit the funds available to be lent to the Debtor to fund a reorganization plan.

While the scope of the automatic stay provision, 11 U.S.C. § 362, is broad, it only stays actions against the debtor and does not extend its protection to guarantors. Philadelphia Newspapers, 407 B.R. at 616. Courts have extended the stay to non debtor third parties when "unusual circumstances" exist, such as when "(i) the non-debtor and debtor enjoy such an identity of interests that the suit of the non-debtor is essentially a suit against the debtor[3]; or (ii) the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization." Id. Debtor's allegations are insufficient by themselves to establish either scenario. While it is true that Mr. Juelle is the president and manager of the Debtor, there is no basis for us to conclude at this juncture that their identity is so intertwined that a suit against Mr. Juelle is essentially a suit against the Debtor, or that judgment against Mr. Juelle would in effect be a judgment against the

---

[3] An illustration of a situation where there is such identity between the debtor and the non-debtor defendant arises when the suit is against a non debtor defendant who is entitled to absolute immunity by the debtor on account of any judgment that might be entered against him. Kreisler v. Goldberg, 478 F.3d 209, 213 (4th Cir. 2007). "Yet the purpose served by extending the stay to directors and officers indemnified by the debtor must be consistent with the purpose of the stay itself, to suspend actions that pose a serious threat to a corporate debtor's reorganization efforts." In re Uni-Marts, LLC, 399 B.R. 400, 415 (Bankr. D.Del. 2009)(citations omitted)

Debtor, and that by filing this action against Mr. Juelle Quicksilver is circumventing the automatic stay provision of the Bankruptcy Code. See, Kreisler v. Goldberg, 478 F.3d 209, 213 (4th Cir. 2007). In fact, the Guaranty Contract provides that Mr. Juelle's obligation under the same is independent of the obligations of the Debtor and a separate action may be brought and prosecuted against Mr. Juelle without first proceeding against the Debtor and without joining the Debtor in any such action. While it is true that if the action is allowed to continue Mr. Juelle will need to dedicate some time defending himself, the factual allegations fail to establish that this collection action brought by Quicksilver based on the Guaranty Contract is so complex that it will actually affect the Debtor, its operation and its reorganization because of Mr. Juelle's distraction. Also, the allegations do not detail why the business is so complicated it requires the undivided personal attention of Mr. Juelle for it to run smoothly. In fact, at the August 10, 2009 hearing the Debtor stated that this is a "small asset chapter 11 case". There are no allegations regarding the amount of time Mr. Juelle dedicates to the Debtor and the amount of time Mr. Juelle has diverted from the Debtor to deal with this collection action. See, In re Uni-Marts, LLC, 399 B.R. at 417 (The court found that the time pressures of the suit against the principal, did not constitute "unusual circumstances" as the debtor's chapter 11 case was small and relatively straightforward, unlike cases such as Johns-Manville or A.H. Robins, which involved many thousands of tort cases, and the limited scope of the adversary action would most probably not consume significant portions of the debtor's principal time or energy.) Furthermore, although initially the Debtor argued that a judgment against Mr. Juelle would limit the funds available to be lent to the Debtor to fund its plan of reorganization, the disclosure statement informs that Mr. Juelle will not fund the Debtor's plan as post petition financing was obtained from a third party, Calacostas, Corp. Thus the financial cost to Mr. Juelle personally in defending the collection action may not have a significant impact on the Debtor. This court agrees with Judge Hillman in the case of M.J.H. Leasing, Inc. when he stated that the debtor's principal intention to devote personal assets to the reorganization of the debtor does not automatically shield him from suit on his personal obligations. M.J.H. Leasing, Inc., 328 B.R. at 367.

In support of its position the Debtor cites cases such as <u>A.H. Robins</u> 788 F.2d 994, which involved multiple cases against the debtor and other co-defendants seeking damages for injuries allegedly sustained by the use of an intrauterine contraceptive device known as Dalkon Shield, manufactured by the debtor.  Some of this personal injury cases filed pre-petition against A.H. Robins and others had been settled, some lost and some won, and the costs of defending these suits both to the debtor and to its insurance carrier had risen into the millions prior to the filing. The court stayed these actions in part because of the enormous impact they would have on the debtor if they were allowed to continue against the co-defendants because, for example, the non debtors third party co-defendants were entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case. <u>Id.</u> at 999.  Similarly the court, in the case of <u>Philadelphia Newspapers</u> found "unusual circumstances" warranting the stay of the actions against non-debtor co-defendants because "the Debtors owe potential contractual and common law duties to indemnify the Non-Debtors, the interests of the Debtors and Non-Debtors in the state action are identical, and the diversion of resources caused by the state action against the Non-Debtors will impact the Debtors' ability to engage in timely and effective reorganization." <u>Philadelphia Newspapers</u>, 407 B.R. at 616.  In <u>Codfish</u> the debtor sought the extension of the automatic stay to debtor's president who had guaranteed debtor's obligations with the FDIC.  The court concluded that in order to apply the injunctive power under 11 U.S.C. 105(a) the evidence presented must "clearly and convincingly show that the estate would be substantially and adversely affected" if the creditor continue to pursue the action against the non-debtor.  This court extended the automatic stay to debtor's president in that case upon finding that the president was uniquely essential in the debtor's reorganization, he had no assets other than his salary as president and would have no incentive to continue in his duties as president of the debtor "if whatever benefits he could anticipate for himself from the reorganization of debtor would become subject to a judgment entered against him in favor of FDIC." <u>Codfish</u>, 97 B.R. at 134.

The Debtor has failed to show that this case presents such "unusual circumstances" warranting the extension of the automatic stay provision to a non-debtor third party.

<u>Conclusion</u>

In light of the aforestated reasons the Debtor's Motion to Extend the Protections of the Automatic Stay to Debtor's President, Oscar Juelle, and to Enjoin the Proceedings Currently Pending Against Him (Docket No. 33) is hereby denied for the following reasons: the request must be initiated as an adversary proceeding and it was not; the allegations in the motion as amended and supplemented fail to address that the Debtor will suffer irreparable harm, thus failing to meet the burden to obtain injunctive relief; and for failure to establish unusual circumstances warranting the extension of the automatic stay.

SO ORDERED.

In San Juan, Puerto Rico, this 20th day of January 2010.

_____
ENRIQUE S. LAMOUTTE
U. S. Bankruptcy Judge